UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL CAPSHAW,                                    Case No. 12-11366

                    Plaintiff,                     Stephen J. Murphy, III
v.                                                 United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                   Michael Hluchaniuk
                                                   United States Magistrate Judge

                    Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 17)

**I.    PROCEDURAL HISTORY**

   A.    Proceedings in this Court

On March 26, 2012, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Stephen J.

Murphy referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of disability and

disability insurance benefits.  (Dkt. 3).  This matter is before the Court on

cross-motions for summary judgment.  (Dkt. 13, 17).

   B.    Administrative Proceedings

Plaintiff filed the instant claims on March 18, 2008, alleging that he became

disabled on May 6, 2006.  (Dkt. 8-3, Pg ID 75).  The claim was initially

1

disapproved by the Commissioner on July 21, 2008.  (Dkt. 8-3, Pg ID 75).

Plaintiff requested a hearing and on June 8, 2010, plaintiff appeared with an

attorney before Administrative Law Judge (ALJ) Andrew G. Sloss, who considered

the case de novo.  In a decision dated June 15, 2010, the ALJ found that plaintiff

was not disabled.  (Dkt. 8-3, Pg ID 75-81).  Plaintiff requested a review of this

decision on August 10, 2010.  (Dkt. 8-2, Pg ID 39-44).  The ALJ's decision

became the final decision of the Commissioner when, after the review of additional

exhibits,[1] the Appeals Council, on February 22, 2012, denied plaintiff's request for

review.  (Dkt. 8-2, Pg ID 28-31); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, that the findings of the Commissioner be

**REVERSED**, and that this matter be remanded for further proceedings under

Sentence Four.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 41 years of age at the time of the most recent administrative hearing.  (Dkt. 8-2, Pg ID 48).  Plaintiff's past relevant work included work as a process coordinator/machinist, electrician trainee, factory janitor, and landscaper. (Dkt. 8-3, Pg ID 81; 8-2, Pg ID 48; 8-6, Pg ID 235).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (Dkt. 8-3, Pg ID 78).  At step two, the ALJ found that plaintiff's degenerative disc disease and pelvic pain were "severe" within the meaning of the second sequential step.  (Dkt. 8-3, Pg ID 77).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 8-3, Pg ID 77).  The ALJ concluded that plaintiff has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except that he can only occasionally climb, balance, stoop, crouch, kneel or crawl.  He is limited to occasional overhead reaching.  (Dkt. 8-3, Pg ID 79).  At step four, the ALJ found that plaintiff could perform his past relevant work as a process coordinator/ machinist.  (Dkt. 8-3, Pg ID 106).

### B.   Plaintiff's Claims of Error

Plaintiff's primary complaint is that the ALJ's decision did not properly

consider and account for plaintiff's interstitial cystitis under SSR 02-2p.  Although

the ALJ found that plaintiff's "pelvic pain" was a severe impairment, at step two,

the ALJ concluded that "[c]linical and laboratory findings have been mostly

negative and any abnormalities have been only mild or minimal.  Diagnostic tests

do not support a reason for his pain complaints."  (Tr. 49, 52-53).  According to

plaintiff, considering SSR 02-2p, the ALJ's decision does not even minimally

explain how the evidence of record supports the final RFC determination.

Plaintiff also contends that the ALJ's credibility analysis is directly linked

with a necessary evaluation of the ALJ's decision with respect to SSR 02-2p and

interstitial cystitis.  According to plaintiff, the ALJ's credibility analysis is

woefully inadequate, is unsupported by the record evidence, and fails to follow the

letter or spirit of SSR 02-2p.  Plaintiff addresses each of the ALJ's conclusions

regarding plaintiff's credibility in detail.

The ALJ's first finding is as follows: "The evidence shows that the claimant

engages in essentially typical daily activities. He is able to function and maintain a

daily routine." (Tr. 52).  According to plaintiff, the ALJ provided no analysis or

evaluation of this statement, and this blanket statement is not supported by the

evidence of record.  The ALJ simply stated that "With respect to activities of daily

living, the claimant reported that he routinely cared for his own personal needs.  He

took care of his parent's dog, feeding and taking it for walks.  He prepared simple

4

meals, shopped for groceries once a month, performed household chores such as light house cleaning and laundry. He handled his personal finances. He spent time going for walks, watching television, playing cards, using the computer and visiting with family members and friends." (Tr. 52). Plaintiff maintains that a review of the evidence relied on by the ALJ proves that the ALJ inappropriately relied on plaintiff's activities of daily living when he is not experiencing pain, nausea, and vomiting from his interstitial cystitis and that the ALJ unfairly used this mischaracterization in order to undermine plaintiff's credibility. On April 11, 2008, plaintiff provided a function report, which is the basis for the ALJ's mischaracterization of plaintiff's daily activities, to Social Security which stated that his daily activities "Depends if I'm sick or not. If I'm sick I can't eat and I'm in bed tossing and turning for [approximately] 6 hours or so. Then I eat and go to sleep because I'm tired." (Tr. 214). With respect to plaintiff's sleep, he wrote "I wake up with abdomen hurting and have to vomit and I'm sick for 6 hours or so." (Tr. 215). He continued, "If I'm sick in bed I don't get dress[ed]...won't take [a bath] when I'm sick...Mom and Dad try to feed me when I'm sick...I'm in the bathroom a lot [using the toilet]." (Tr. 215). He added, "When I'm ill I can't function." (Tr. 216). During the hearing, plaintiff testified that for about three years preceding the hearing he "got sick all the time [from using the bathroom]...I've had every test trying to figure out what it is and it's just

5

abdominal pain right here and it radiates to the back where my kidney is at. And I get all nauseated and I start to get flush in the face. I start to sweat. I throw up and it hurts so bad I have to lay in bed for like a couple hours with rice bags heating them up, you know.  So, I would end up getting sick like that, you know, [after using the bathroom]." (Tr. 22).

In describing his interstitial cystitis, plaintiff testified "Sometimes right after I eat I get sick.  Sometimes right after I urinate...I get a sharp pain like someone is stabbing me in my bladder...And I just have to lay down right away." (Tr. 28).  In response to how often this happens, plaintiff testified "it usually happens once or twice a week and there have been times where it has happened three to four times a week for two months straight."  (Tr. 28).  Again, plaintiff testified that with these "attacks" he can be "in bed for a good eight to ten hours." (Tr. 28). Plaintiff contends that although his testimony and statements revealed that when in pain from his interstitial cystitis he cannot function, the ALJ failed to consider this in evaluating plaintiff's credibility.  Considering all of the evidence of record, the ALJ's finding with respect to plaintiff's activities of daily living is not supported by substantial evidence, because it ignores evidence which is inconsistent with the ALJ's findings.

The ALJ's second finding is as follows: "Clinical and laboratory findings have been mostly negative and any abnormalities have been only mild or minimal.

6

Diagnostic tests do not support a reason for his pain complaints."  (Tr. 52).  SSR

02-2p explains that the diagnosis of interstitial cystitis is "one of exclusion."

Plaintiff first started treating for his symptoms from interstitial cystitis in 2007.

(Tr. 291).  SSR 02-2p explains that the testing used to aid in the diagnosis of

interstitial cystitis include urinalysis, urine culture, urine cytology, cycstoscopy,

biopsy of the bladder wall, and culture of prostate secretions.  From 2007 to 2009,

plaintiff points out that he underwent numerous tests in order to rule out other

diseases or disorders.  To name a few: May 2007 lab work and CAT scan, May

2007 lower and upper GI, April 2008 biopsies and colonoscopy, May 2009

urinalysis, August 2009 semen analysis, and November 2009 cystoscopy with

hydrodistention of the bladder.  (Tr. 291, 292, 346, 504, 501, 506).  SSR 02-2p

explains that "The standard test currently used to aid in the diagnosis of IC is a

cystoscopy with hydrodistention of the bladder."  It was plaintiff's November 2009

cystoscopy which lead to the ultimate diagnosis of interstitial cystitis.  (Tr. 501).

Thus, plaintiff maintains that the ALJ's conclusion that diagnostic tests do not

support a reason for plaintiff's pain complaints, or that his clinical and laboratory

findings have been negative, ignores SSR 02-2p and the negative testing necessary

in order to diagnose plaintiff's interstitial cystitis and discover the cause of his pain

complaints.  Plaintiff's November 2009 cystoscopy was positive, leading to a

confirmed diagnosis of interstitial cystitis.  (Tr. 501).  Thus, plaintiff asserts that

the ALJ's opinion that no diagnostic tests support a reason for plaintiff's pain complaints is not supported by substantial evidence.

The ALJ's third finding is as follows: "Treatment for his abdominal/urinary issues is not continuous and there is no documentation of allegations that he vomits, etc. frequently." (Tr. 52).  As already pointed out, plaintiff's treatment has been ongoing for his interstitial cystitis since 2007.  Plaintiff contends that he has had an extraordinary amount of testing performed in order to reach the ultimate diagnosis of interstitial cystitis in 2009.  In May of 2010, plaintiff was surgically equipped with an InterStim device to aid in his continued urinary urgency, pelvic pain, and abdominal pain.  (Tr. 623-626).  As far as plaintiff's signs and symptoms, including pain and nausea, medical records throughout the administrative transcript negate the ALJ's opinion.  (*See* Tr. 315, 332, 345, 504, 538, 623; documenting plaintiff's continuing symptoms, including abdominal pain, pelvic pain, urinary urgency, and vomiting).  Thus, plaintiff concludes that the ALJ's mistaken belief that "there is no documentation" of plaintiff's symptoms is not supported by substantial evidence.

The ALJ's fourth finding is as follows: "He obtains satisfactory relief from prescribed medications. The medical record contains no significant complaints of medication side effects or ineffectiveness that might reasonably prevent him from completing an eight-hour workday."  (Tr. 52-53).  According to plaintiff, the ALJ's

8

opinion suffers from a fundamental flaw.  Plaintiff's symptoms from interstitial cystitis began prior to 2007, but he was not officially diagnosed with interstitial cystitis until 2009.  Thus, any treatment received prior to his diagnosis, would not have necessarily been targeted in an attempt to treat that specific disorder. Moreover, plaintiff's pain, urinary urgency, and vomiting continued through 2010, despite ongoing treatment.  Additionally, plaintiff says that the ALJ cites to no evidence which supports his blanket statement about medication relief. Thus, without any evidentiary support for such a conclusion, the statement is not supported by substantial evidence.  Moreover, although plaintiff reported some relief of his symptoms following the temporary InterStim implantation in May of 2010, this operation was four years after the Plaintiff's onset date and one month prior to final surgery.  (Tr. 47, 49, 624).  According to plaintiff, this recent evidence cannot be used against plaintiff's credibility to allege that he obtained "satisfactory" relief from treatment from 2006 through 2010.

The ALJ's fifth finding is as follows:  "Despite his complaints of constant pain and inability to do much, he has been found to have normal muscle strength and tone, no motor or sensory weakness, no deformity or atrophy."  (Tr. 53). According to plaintiff, this statement has no bearing on plaintiff's interstitial cystitis disorder.  Muscle strength testing, tone, motor loss, sensory weakness, deformity, or atrophy are not listed in SSR 02-2p as signs and symptoms of

9

interstitial cystitis.  Likely, the ALJ provided this statement with regard to

plaintiff's back conditions.  However, the evidence of record contradicts the ALJ's

statement.  An April 29, 2008 consultation for plaintiff's neck and arm pain

revealed a limited range of motion in the neck, decreased sensory of the arm and

forearm, and decreased deep tendon reflexes.  (Tr. 491).  Examinations of the

lumbar spine revealed restricted range of motion, decreased sensation of the right

lower extremity, and decreased motor strength.  (Tr. 563, 571).  Additionally, a

May 2010 EMG of the lower extremities revealed chronic bilateral L5

radiculopathy with mild active denervation and right peroneal axonal and

demyelinative neuropathy.  (Tr. 662).  Although the ALJ makes many statements

with respect to plaintiff's overall credibility, according to plaintiff, no reading of

the evidence of record supports a finding of substantial evidence with respect to the

ALJ's credibility analysis and evaluation of plaintiff's interstitial cystitis under

SSR 02-2p.  Plaintiff contends that the combined effect of the ALJ's flawed

credibility evaluation is not harmless error, as the ALJ ignored numerous

limitations resulting from plaintiff's interstitial cystitis in forming an RFC

determination and providing hypothetical questioning to the vocational witness.

Again, plaintiff specifically testified that during a bad day with regard to his

interstitial cystitis pain, he lays in bed with heat pads for up to eight to ten hours,

with the same often occurring more than once per week.  Plaintiff points out that

such a limitation would prevent plaintiff from engaging in sustained work activity

on a regular and continuing basis for eight hours a day, five days a week for a forty

hour work week or an equivalent work schedule.  SSR 96-8p.  The vocational

witness testified that such an inability would preclude all work. (Tr. 35).  Thus, by

providing a faulty credibility analysis, not explaining

how the evidence of record supported the RFC determination, providing

hypothetical questioning to the vocational witness which did not adequately

account for all of plaintiff's limitations, and by failing to consider plaintiff's

interstitial cystitis under SSR 02-2p, plaintiff contends that the ALJ's decision is

not supported by substantial evidence.

Plaintiff also argues that substantial evidence does not support the ALJ's

step four finding that plaintiff could perform his past work as it was actually and

generally performed.  In this case, the evidence of record shows that plaintiff

actually performed his past work as a "process coordinator" 8 hours per day and 6

days per week.  (Tr. 229).  Thus, plaintiff performed his past relevant work as a

"process coordinator" above that of a "regular" basis.  *See* SSR 96-8p.

Accordingly, plaintiff contends that his performance of his past work as a "process

coordinator" exceeds the RFC as found by the ALJ, to wit: "the claimant has the

residual functional capacity to perform sedentary work...except that he can only

occasionally climb, balance, stoop, crouch, kneel or crawl.  He is limited to

11

occasional overhead reaching." (Tr. 51). Plaintiff contends that because the ALJ did not provide that plaintiff's RFC included the ability to work above that of a regular 8 hours per day, 5 days per week, or the equivalent, work schedule, Social Security policies dictate that plaintiff's RFC determination is his maximum ability to perform a 40 hour per week job. Since the evidence shows that plaintiff performed his past work as a "process coordinator" on a 48 hour per week basis (8 hours per day, 6 days per week), plaintiff's RFC excludes the performance of plaintiff's past work as it was "actually performed."

Plaintiff also argues that substantial evidence does not support a finding that he could perform his past work as a "process coordinator" as the position is "generally performed." Although the ALJ obtained vocational witness testimony at the hearing, the testimony of the witness, according to plaintiff, does not provide substantial evidence in support of the ALJ's decision. During the hearing, the vocational witness testified that, based on the hypothetical question that the ALJ adopted as the RFC determination, plaintiff could perform his past work as "the Process Coordinator." (Tr. 33). The VE did not testify as to whether this statement was in reference to a "process coordinator" position as plaintiff "actually performed" it or as it is "generally performed." As outlined above, plaintiff's RFC precludes his ability to perform the job of "process coordinator" as it was "actually performed." The vocational witness testified that her testimony was consistent

12

with the DOT.  (Tr. 35).  However, plaintiff points out that the DOT does not

contain the job of "Process Coordinator."  Thus, plaintiff contends, either the

vocational witness's testimony was inconsistent with the evidence or record, or it

was inconsistent with the DOT, the alleged source of the witness's testimony.

Regardless of the inconsistency, plaintiff maintains that the testimony of the

vocational witness is not substantial evidence for which the ALJ properly relied.

Additionally, plaintiff asserts that the vocational witness's testimony is ambiguous

at best, as it does not provide whether the "Process Coordinator" position could be

performed as "actually performed" or as "generally performed."  As a result, a

reviewing court cannot conduct adequate judicial review of the vocational

witness's testimony because she does not specify whether her testimony solely

relied on information given by plaintiff, information contained in the DOT, or

both.  Without knowing the source of the vocational witness's testimony, her

testimony is not substantial evidence properly relied on by the Commissioner.

Thus, plaintiff argues that this matter should be remanded under sentence four

because substantial evidence does not support the conclusion that plaintiff could

perform his past work as it was "actually performed" or as it is "generally

performed."

      C.    <u>Commissioner's Motion for Summary Judgment</u>

      The Commissioner urges the Court to reject plaintiff's argument that the

ALJ gave insufficient consideration to plaintiff's interstitial cystitis under SSR 02-2p because the ALJ not only found pelvic pain to be a severe impairment, he also considered plaintiff's reports of pain on urination, abdominal and suprapubic pain, nausea, vomiting, and urinary frequency and urgency. (Tr. 50-51). The ALJ noted the November 2009 diagnosis of interstitial cystitis, and the follow up reports by Dr. Mansour detailing plaintiff's refractory urinary urgency, and the Interstim placement for bladder control. (Tr. 51, 623-26). The ALJ discussed plaintiff's improvement after the trial period and decision to proceed with permanent placement, as well as the decreased bowel and urinary frequency that resulted. (Tr. 51). Still further, the ALJ noted that the treatment for the urinary issue was not continous, and no doctor opined that plaintiff had continuing functional restrictions due to interstitial cystitis. (Tr. 52-53). Significantly, the ALJ considered plaintiff's testimony, which mentioned only that he experienced urinary frequency at night (6-10 times), when he first began the Interstim trial. (Tr. 30). The record supports the ALJ's finding that with the Interstim therapy. Plaintiff had decreased urinary frequency. (Tr. 623). According to the Commissioner, the ALJ gave more than adequate consideration to the effects of interstitial cystitis in accordance with the Ruling, and substantial evidence supports his RFC finding that plaintiff could perform a range of sedentary

work. (Tr. 52). *See Jones v. Comm'r of Soc. Sec.*, 2006 WL 1302545 at *2,

14

181 Fed. Appx. 767 (11th Cir. 2006) (notwithstanding absence of citation to SSR 02-2p, "the record. . . does not support [the] contention that the ALJ failed to consider SSR 02-2p or to properly incorporate the ruling.").

The Commissioner also argues that plaintiff's argument regarding the ALJ's credibility findings should be rejected. The ALJ considered not only the objective medical evidence, but all other evidence of record, before concluding that plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not credible to the extent alleged. (Tr. 52-53). Specifically, the ALJ noted that the record evidence did not contain objective signs and findings to support the intensity of symptoms that plaintiff claimed to have. (Tr. 52). He noted that the clinical and laboratory findings were negative and that the diagnostic tests did not support the pain complaints to the extent alleged. (Tr. 52). Plaintiff contends that this reasoning was erroneous because interstitial cystitis is a diagnosis of exclusion. However, his argument confuses the issue. Here, the ALJ accepted the diagnosis of interstitial cystitis, and noted the cystoscopy results that supported it. (Tr. 51). According to the Commissioner, what the ALJ did not accept was the extent to which plaintiff claimed he had significantly limiting pain and other symptoms, because the objective medical evidence failed to support the claims. In particular, the ALJ noted that plaintiff did not receive continuous treatment for urinary issues and no doctor had opined that he had significant

limitations due to interstitial cystitis.  (Tr. 52).  Indeed, Dr. Mansour's examination

findings supported the conclusion that plaintiff's symptoms improved with

Interstim therapy.  (Tr. 623-24).  Certainly, other objective evidence of record fails

to support the significant limitations plaintiff alleges he had before the Interstim

therapy.  Plaintiff's family doctor noted no reports of urinary frequency or nocturia

on examination in October 2009, November 2009 or April 2010.  (Tr. 587, 589,

591).

The ALJ also considered evidence of plaintiff's daily activities.  (Tr. 52).

The Commissioner contends that substantial evidence supports his conclusion that

plaintiff was able to maintain a good range of activity.  Specifically, Plaintiff

reported that when he felt well, he could eat, do household chores, work on

the computer, and go for a walk.  (Tr. 214).  He reported that he took care of his

parents' dog (walking and feeding it), got dressed, prepared meals, ran the vacuum,

and cleaned the bathroom and kitchen.  (Tr. 214-16).  He also shopped for

groceries, and for hobbies, enjoyed reading, watching television, playing card

games on the computer, visiting with family, and going fishing.  (Tr. 217-18).

Although plaintiff contends that he could not perform these activities all of the

time, and only when he did not have interstitial cystitis symptoms, he points only

to his own subjective complaints about when those symptoms limited him

significantly, and not to anything in the medical record to support those claims.

16

Thus, the Commissioner maintains that substantial evidence supports the credibility finding.

To the extent plaintiff raised credible allegations, the Commissioner asserts that the ALJ accommodated them by limiting plaintiff to a range of sedentary work that accommodated numerous limitations for his impairments.  The VE's testimony constitutes substantial evidence supporting the ALJ's finding that plaintiff could perform her past relevant work and therefore, was not disabled.  Plaintiff, however, argues that because in his "actual" performance of his past work as a process coordinator, he worked 48 hours a week, the ALJ erroneously concluded that he could perform this work on a regular and continuing basis (8 hours a day, 5 days a week). The Commissioner contends that this argument should be rejected because if plaintiff could perform it 6 days a week, he could perform it 5 days a week, and the fact that he worked a day more a week in the past is of no significance.  (Tr. 34).  Moreover, a claimant must prove that he or she is unable to return to his or her past relevant work either as he or she performed that work or as that work is generally performed in the national economy.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  According to the Commissioner, the VE's testimony supports the ALJ's conclusion that the past relevant work could be performed.

In addition, the Commissioner asserts that plaintiff's argument appears to confuse the concept of conflict, by arguing that the position of process coordinator

does not appear in the DOT.  He incorrectly assumes that the terminology in the

DOT regarding these jobs automatically creates a conflict with the VE's testimony,

merely because the precise job titles mentioned by the VE do not exist in the DOT.

The Commissioner contends that this argument has been rejected by the Sixth

Circuit.  *See Lindsley v. Comm'r of Soc. Sec*., 560 F.3d 601, 605 (6th Cir. 2009)

("The fact, therefore, that a VE and the DOT might use different terminology to

describe employment positions does not establish that a conflict exists between

these sources of evidence."); *see also Warf v. Shalala*, 844 F. Supp. 285, 289-90

(W.D. Va. 1994) ("Applying principles of logic and public policy to this case, the

Court holds that the "definitional requirements" [of the DOT] dealing with

reasoning, mathematical and language development are merely advisory in

nature.").  Even if there was an apparent conflict between the VE's testimony and

the DOT, the Commissioner points out that plaintiff's attorney did nothing in

cross-examination to develop any perceived conflict.  (Tr. 35); *see Beinlich v.*

*Comm'r of Soc. Sec.*, 345 Fed.Appx. 163, 168-69 (6th Cir. 2009) (citation omitted)

("[T]he ALJ is under no obligation to investigate the accuracy of the VE's

testimony beyond the inquiry mandated by SSR 00-4p. This obligation falls to the

plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out

any conflicts with the DOT.").  Thus, the Commissioner urges the Court to

conclude that substantial evidence supports the ALJ's finding.

18

D.    Plaintiff's Reply

Plaintiff finds fault with the Commissioner's primary argument that "The record supports the ALJ's finding that with the Interstim therapy. [sic] Plaintiff had decreased urinary frequency (Tr. 623)."  According to plaintiff, this contention is illogical because plaintiff's hearing was held on June 8, 2010, less than one month after the beginning of plaintiff's Interstim trial where plaintiff reported "a slight decrease in his pain in the right side of the abdomen." (Tr. 623).  The record establishes that plaintiff began experiencing right abdominal pain at least one year prior to a May 1, 2007 consultation.  (Tr. 291).  Thus, according to plaintiff, his contended "relief" from his Interstim trial did not come until over three years after his severe impairment began.  Both the ALJ and the Commissioner fail to consider the importance of SSR 02-2p in this context.

The Commissioner next contends that the ALJ's credibility finding "considered not only the objective medical evidence, but all other evidence of record."  According to plaintiff, this contention seems to contradict the Commissioner's prior argument, and the ALJ's decision mirrors the same inconsistency.  Specifically, the Commissioner argues on one page that the ALJ "accepted the diagnosis of IC, and noted the cytoscopy results that supported it." Plaintiff does not dispute that the ALJ did in fact acknowledge this diagnosis on one page of his decision.  (Tr. 51).  However, later in the ALJ's evaluation, he

19

concludes that "Clinical and laboratory findings have been mostly negative and any abnormalities have been only mild or minimal. Diagnostic tests do not support a reason for his pain complaints." (Tr. 52). According to plaintiff, this finding is in conflict with SSR 02-2p, which explains that interstitial cystitis is diagnosed through exclusion and that plaintiff's cytoscopy results firmly provided a basis for plaintiff's complaints of pain as well as other symptoms resulting from interstitial cystitis. Plaintiff argues that it is "absolutely astonishing that on one page the ALJ would acknowledge the Plaintiff's positive test results which, after years, confirmed the diagnosis of [interstitial cystitis], and then on the next page, attack the Plaintiff's credibility, for a lack of positive test results, without even considering the aforementioned positive cystoscopy testing, resulting in the diagnosis of [interstitial cystitis]."

The Commissioner's allegation that plaintiff's family doctor did not report his symptoms from interstitial cystitis is an exaggeration of the record. According to plaintiff, not only did he undergo numerous tests from 2007 through 2010 in order to determine the cause of his interstitial cystitis symptoms, his primary doctor frequently reported plaintiff's abdominal pain. (Tr. 593-610). Next, the Commissioner argues that the ALJ properly considered plaintiff's activities of daily living. Again, plaintiff contends that the ALJ's credibility evaluation only considered plaintiff's activities of daily living when he was not experiencing

20

severe symptoms from interstitial cystitis.  According to plaintiff, defendant misses
the point that the ALJ outright ignored plaintiff's functioning when he experienced
flare-ups of his interstitial cystitis symptoms.  Plaintiff maintains that the ALJ's
reading of the evidence is not supported by substantial evidence because it ignores
evidence not favorable to the Commissioner's final determination.  While the
Commissioner argues that the ALJ implicitly considered SSR 02-2p, his decision
clearly reveals the opposite.  Specifically, the ALJ's credibility evaluation clearly
ignores all evidence in support of plaintiff's claim, including evidence the ALJ had
cited to on the previous page: the positive cystoscopy findings.  Moreover, the ALJ
discredits plaintiff's credibility because of prior negative test results; however, if
the ALJ had considered SSR 02-2p, the ALJ would have understood that these
negative test results are common in the diagnosis of interstitial cystitis, as it is a
diagnosis of exclusion.  Plaintiff contends that no reading of the ALJ's evaluation
of his severe impairments resulting from interstitial cystitis, or the ALJ's
evaluation of plaintiff's credibility, is supported by substantial evidence; and as
such, this case should be remanded pursuant to Sentence Four.

As to the vocation issues, plaintiff asserts that the Commissioner misses the
point of plaintiff's argument.  First, the fact that plaintiff worked 6 days a week
prior to suffering from severe impairments, which limited his ability to work is
quite significant and the Commissioner's logic is backwards.  According to

plaintiff, it is not logical to assume that a person who worked 6 days a week, prior to becoming impaired, could therefore work 5 days, after becoming impaired. However, it is quite logical that where plaintiff began to suffer from severe impairments which limited his ability to work, may no longer be capable of performing more than a 40 hour workweek, as plaintiff had previously performed in his past work.  Moreover, the ALJ did not provide for an RFC that reveals that plaintiff's severe impairments would allow for anything more than a regular work week (i.e. 8 hours a day, 5 days a week or the equivalent).  Thus, the ALJ's findings, on their face, preclude the conclusion that plaintiff could perform his past work as it was "actually performed."

Therefore, plaintiff argues that the only question which remains is whether substantial evidence supports a finding that plaintiff could perform his past work as it is generally performed.  According to plaintiff, the record is devoid of substantial evidence on this issue.  Although a vocational witness testified at a hearing that, based on a hypothetical question, a person with the stated limitations would be capable of performing plaintiff's past work as a "process coordinator," the witness failed to testify as to whether such performance would be as plaintiff actually performed the position or as the job is generally performed. (Tr. 33). Thus, plaintiff says that a reviewing court is left to guess as to the source of the vocational witness's testimony, and the ALJ's reliance on unexplained, unsupported

22

testimony denotes a lack of substantial evidence. And, the fact that the job of "process coordinator" is not contained in the DOT is further lack of substantial evidence. This Court has reasoned that the primary purpose of SSR 00-4p is to ensure that a vocational witness's testimony is well supported. *Bradner v. Comm'r of Soc. Sec.*, 2012 WL 3115449 (E.D. Mich. 2012), *Report & Recommendation adopted in relevant part*, 2012 WL 3030734 (E.D. Mich. 2012). Where the source of the vocational witness's testimony is unknown, substantial evidence does not support an ALJ's conclusion that the witness's testimony was consistent with the Dictionary of Occupational Titles. *Id.* In the present case, it is clear that the vocational witness testified about a "process coordinator" position that is not contained in the DOT, and thus the witness did not rely solely on the DOT. Therefore, plaintiff asserts that it is impossible for a reviewing Court to verify that the evidence relied on by the ALJ is in fact substantial as the witness's testimony was quite ambiguous.

Although at the end of the hearing the ALJ asked the vocational witness: "Is your testimony consistent with the Dictionary of Occupational Titles," plaintiff asserts that this question and the resulting answer are also ambiguous. (Tr. 35). The vocational witness's testimony during the hearing was cut in half by additional testimony from plaintiff. The ALJ asked the consistency question after asking a second hypothetical question, which was later discarded by the ALJ. It is unclear

whether the vocational witness confirmed that the entirety of her testimony was consistent with the DOT, or just the latter half, and neither the ALJ nor the vocational witness provided clarity on this issue. The ambiguities with regard to the vocational witness's testimony make it impossible for a reviewing court to adequately review and verify the evidence relied on by the ALJ, and therefore, plaintiff contends that the evidence relied on by the ALJ is not substantial.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions

24

absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion

25

about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of

26

appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

28

> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

      C.    <u>Analysis and Conclusions</u>

      SSR 02-02p, Titles II and XVI: Evaluation of Interstitial Cystitis, clarifies

the Commissioner's policies for evaluating claims for disability on the basis of

interstitial cystitis.  SSR 02-2p, 2002 WL 32063799 (Nov. 5, 2002).  SSR 02-2p

explains that interstitial cystitis is a "complex, chronic bladder disorder that can be

the basis for a finding of disability when accompanied by appropriate symptoms,

signs, and laboratory findings.  It is characterized by urinary frequency, urinary

urgency, and pelvic pain" and "may be associated with . . . irritable bowel

syndrome, inflammatory bowel disease. . . ."  *Id.* at *1.  Although symptoms vary

in both kind and intensity, "[t]he three most common symptoms are an urgent need

to urinate (urgency), a frequent need to urinate (frequency), and pain in the bladder

and surrounding pelvic region."  *Id*. at *2.  SSR 02-2p cautions that "[a]n

assessment should be made of the effect [interstitial cystitis] has upon the

individual's ability to perform routine movement and necessary physical activity

within the work environment," noting that interstitial cystitis can affect the ability

to focus and sustain attention on the task at hand due to chronic pelvic pain, can

lead to drowsiness and lack of mental clarity during the day because of nocturia

(nighttime urinary frequency) disrupting sleep patterns, or the presence of urinary

frequency can necessitate trips to the bathroom as often as every 10 to 15 minutes, day and night.  *Id.* at *5-6.

While the Commissioner correctly points out that the mere failure to mention SSR 02-2p is not itself reversible error, the undersigned concludes that the ALJ's analysis of plaintiff's interstitial cystitis and accompanying symptoms was not adequate.  *See Labanderia v. Astrue*, 2010 WL 1963426, at *1 (S.D. Ohio May 17, 2010) ("When making a residual functional capacity determination, the decisionmaker must consider the impact of interstitial cystitis[.]") (citing SSR 02-2p).  The problem with the ALJ's analysis is three-fold.  First, the ALJ did not adequately address the policies expressed in SSR 02-2p.  While the failure to cite SSR 02-2p alone is not necessarily reversible error, this failure further highlights the ALJ's inadequate consideration of plaintiff's severe impairments in this case.  *See Chavis v. Astrue*, 2012 WL 2711271, at *23 (S.D. Ohio July 9, 2012) (finding that the ALJ's decision does not demonstrate that he followed SSR 02-2p in making his decision because he failed to examine the intensity, persistence and limiting effects of plaintiff's interstitial cystitis and the decision is void of any discussion of the limitations imposed by plaintiff's impairment), *adopted by* 2012 WL 5306130 (S.D. Ohio Oct. 26, 2012).  The ALJ here made no finding as to the limitations imposed by the frequency of urination issue, other than to discount plaintiff's claims of frequency in their entirety, and he failed to incorporate a need

31

for restroom breaks, ready access to a bathroom, or any similar accommodation in his RFC or the hypothetical question he propounded to the vocational expert. In addition, the ALJ did not consider the possible disruption in sleeping patterns caused by nocturia and whether plaintiff's pain from both his back problems and his interstitial cystitis affected his ability to focus and sustain attention, as set forth in SSR 02-2p. Accordingly, the case should be remanded for further consideration consistent with SSR 02-2p.

The second problem with the ALJ's analysis also serves to further explain why and how the failure to consider SSR 02-2p is so problematic in this case. As the Commissioner has pointed out, none of plaintiff's treating physicians, which include a pain management specialist, a urologist, a primary care physician, and others, offered any opinions regarding plaintiff's functional limitations. Indeed, no physician, state agency or otherwise, has offered any opinion regarding plaintiff's functional limitations at any point in the review and consideration of plaintiff's claim.[2] Thus, we are left with the circumstance of the ALJ interpreting raw medical data without the benefit of an expert medical opinion.

Importantly, in weighing the medical evidence, "'ALJs must not succumb to

---

[2] Charles Edmonds, M.D. opined in April 2008 that plaintiff's impairment, as presented at that time, was nonsevere. (Dkt. 8-7, Pg ID 372). After reviewing some additional medical evidence or records, Dr. Edmonds again opined on June 3, 2008 that plaintiff's condition was nonsevere. (Dkt. 8-8, Pg ID 519). There is nothing in the record suggesting that Dr. Edmonds or any other medical advisor performed any further analysis of plaintiff's medical records or his interstitial cystitis diagnosis in the subsequent two years leading up to the hearing in June 2010.

the temptation to play doctor and make their own independent medical findings.'"

*Simpson v. Comm'r of Soc. Sec.*, 344 Fed.Appx. 181, 194 (6th Cir. 2009), quoting

*Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).  Accordingly, "an ALJ may not

substitute his [or her] own medical judgment for that of the treating physician

where the opinion of the treating physician is supported by the medical evidence."

*Id.* (internal quotations omitted); *see also Bledsoe v. Comm'r of Social Sec.*, 2011

WL 549861, at *7 (S.D. Ohio 2011) ("An ALJ is not permitted to substitute her

own medical judgment for that of a treating physician and may not make her own

independent medical findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL

1733181, at *13 (S.D. Ohio 2008) ("[t]he ALJ must not substitute his own

judgment for a doctor's conclusion without relying on other medical evidence or

authority in the record.").  In other words, "[w]hile an ALJ is free to resolve issues

of credibility as to lay testimony, or to choose between properly submitted medical

opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that

of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL

3584468, at *14 (S.D. Ohio 2011).

The ALJ also reserves the right to decide certain issues, such as a claimant's

RFC.  20 C.F.R. § 404.1527(d).  Nevertheless, courts have stressed the importance

of medical opinions to support a claimant's RFC, and cautioned ALJs against

relying on their own expertise in drawing RFC conclusions from raw medical data.

*See Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio 2009) ("The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.'"), quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [RFC] determination."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.").  As the *Deskin* court explained:

> An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence. Where the "medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) ... [the Commissioner may not] make the connection himself."

*Deskin*, 605 F.Supp.2d at 912, quoting *Rohrberg v. Apfel*, 26 F.Supp.2d 303, 311

(D. Mass. 1998) (internal citation omitted)[3]; *see also Mitsoff v. Comm'r of Soc. Sec.*, 2013 WL 1098188, *8 (S.D. Ohio 2013) (collecting cases).

There are limited occasions when the medical evidence is so clear, and so undisputed, that an ALJ would be justified in drawing functional capacity conclusions from such evidence without the assistance of a medical source. *Mitsoff*, 2013 WL 1098188, *9, citing *Deskin*, 605 F.Supp.2d at 912 ("To be sure, where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment"). This does not appear to be such a case, particularly where the plaintiff was suffering from a complex diagnosis such as interstitial cystitis, as acknowledged by the Commissioner in SSR 02-2p, in combination with other severe impairments. Under these circumstances, an expert medical advisor is absolutely critical to properly evaluating plaintiff's impairments, symptoms, and functional limitations. Thus, the undersigned concludes that this matter should be remanded so that the ALJ can obtain the opinion of an expert

---

[3] "Properly understood, *Deskin* sets out a narrow rule that does not constitute a bright-line test." *Kizys v. Comm'r of Soc. Sec.*, 2011 WL 5024866 at *2 (N.D. Ohio 2011). Rather, *Deskin* potentially applies in only two circumstances: (1) where an ALJ made an RFC determination based on no medical source opinion; or (2) where an ALJ made an RFC determination based on an outdated source opinion that did not include consideration of a critical body of objective medical evidence. *Id.* In this case, there is no medical source opinion on plaintiff's residual functional capacity and a significant body of medical evidence was submitted after Dr. Edmonds' brief evaluation of the early medical records.

medical advisor on plaintiff's residual functional capacity.[4]

And, the third component of the ALJ's erroneous analysis relates to plaintiff's purported "improvement." After his Interstim surgery, "improvement" was, in fact, noted by plaintiff's urologist and plaintiff himself. In the view of the undersigned, the ALJ placed far to much emphasis on the bare statement of improvement in May 2010. Notably, such improvement in May 2010 says nothing about the level of impairment suffered by plaintiff previously and whether he was able to work from the time he claims to have been disabled to the point of "improvement." More importantly, his "improvement" tells us nothing about plaintiff's actual functional limitations either before the "improvement" or afterward. "Better" does equate to an ability to work. Surely plaintiff's treating physicians, particularly his urologist, will have opinions based on their long-term

---

[4] The undersigned also notes that another flaw in the ALJ's analysis is lack of a medical advisor on the equivalency issue at step three of the sequential analysis. The great weight of authority holds that a record lacking any medical advisor opinion on equivalency requires a remand. *Stratton v. Astrue*, 2012 WL 1852084, at *13 (D.N.H. May 11, 2012) (collecting cases); *see also Byberg v. Comm'r of Soc. Sec.*, 2013 WL 1278500, at *2 (E.D. Mich. Mar. 27, 2013); *Harris v. Comm'r of Soc. Sec.*, 2013 WL 1192301, at *8 (E.D. Mich. Mar. 22, 2013) (remanding because a medical opinion on the issue of equivalence is required, regardless of whether the SDM model is implicated); *Hayes v. Comm'r of Soc. Sec.*, 2013 WL 766180, at *8-9 (E.D. Mich. Feb. 4, 2013) (remanding because no expert opinion on equivalence in the record), *adopted by* 2013 WL 773017 (E.D. Mich. Feb. 28, 2013); *Maynard v. Comm'r of Soc. Sec.*, 2012 WL 5471150 (E.D. Mich. Nov. 9, 2012) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence."). While the undersigned is not necessarily convinced that plaintiff can show that his physical impairments satisfy the equivalency requirements, the undersigned finds that the lack of an expert medical opinion on the issue of equivalency is problematic and violated the requirements of SSR 96-6p. For these additional reasons, the undersigned recommends that, on remand, the ALJ should obtain the opinion of a qualified medical advisor on the issue of equivalence as to plaintiff's physical impairments.

treatment of plaintiff that can inform the ALJ and the state agency medical advisor regarding plaintiff's functionality throughout the period in question, both before and after the Interstim placement. Thus, while the ALJ may not have been required to recontact plaintiff's treating physicians under the applicable Sixth Circuit authority,[5] given the complexity of his pain issues relating to both his back conditions and interstitial cystitis, such opinions would be extraordinarily helpful in addressing plaintiff's functional capacity on remand. And, such opinions are critical to evaluating plaintiff's credibility. Given that much of plaintiff's testimony was deemed not credible based on the ALJ's failure to follow 02-2p and the lack of any medical opinions in the record, plaintiff's credibility will necessarily have to be re-evaluated on remand.

Finally, in the view of the undersigned, given all the additional evidence that is required to be obtained on remand, the ALJ will necessarily have to obtain additional vocational expert evidence to formulate his RFC. Plaintiff's counsel is free to explore and question the vocational expert and clarify any unresolved issues at that time.

IV.   **RECOMMENDATION**

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

---

[5]   *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269 (6th Cir. 2010) and SSR 96-5p.

for summary judgment be **DENIED**, that the findings of the Commissioner be

**REVERSED**, and that this matter be remanded for further proceedings under

Sentence Four.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health

and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

38

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 9, 2013                    s/Michael Hluchaniuk
                                        Michael Hluchaniuk
                                        United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>August 9, 2013</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>John M. Brissette, Andrew J. Lievense, AUSA, and Jessie Wang-Grimm, Social Security Administration</u>.

                                        s/Deborah J. Goltz for Tammy Hallwood
                                        Case Manager
                                        (810) 341-7850
                                        tammy_hallwood@mied.uscourts.gov